*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BLUE WATER CANNABIS COMPANY, LLC,
doing business as PUFF CANNABIS COMPANY,
H.O.D. WESTLAND, LLC, HENNDOGS
HOLDINGS, LLC, doing business as GREEN VIBE,
and ATTITUDE WELLNESS, LLC, ,

UNPUBLISHED
April 21, 2025
10:24 AM

Plaintiffs,

and

MHS WESTLAND, LLC, and EXCLUSIVE
BRANDS, LLC,

Plaintiffs-Appellants,

and

HARPER VENTURES, LLC,

Plaintiff-Appellee,[1]

and

COMBINED CANNABIS OF MICHIGAN, LLC,

Intervening Plaintiff-Appellant,

and

---

[1] Plaintiff Harper Ventures, LLC was an appellant in the original appeal before this Court, but did not join in the application to the Michigan Supreme Court. In its order remanding this case, the Supreme Court designated Harper Ventures as a "Plaintiff-Appellee." See See *Blue Water Cannabis Co, LLC v City of Westland*, ___ Mich ___; 12 NW3d 609 (2024) ("*Blue Water II*"). We will adopt that designation here, but note that the interests of Harper Ventures are aligned with the other appellants, not with the other appellees.

CANDID LABS, LLC,

        Intervening Plaintiff,

v

CITY OF WESTLAND, WESTLAND CITY
COUNCIL, WESTLAND MARIJUANA
SELECTION COMMITTEE, JAMES HART,
JAMES GODBOUT, TASHA GREEN, MICHAEL
LONDEAU, PETER HERZBERG, MIKE
MCDERMOTT, and ANDREA RUTKOWSKI,

        Defendants-Appellees,

and

QUALITY ROOTS, INC., MPM-R VIII, LLC, and
KARVOL ENTERPRISES, LLC,

        Intervening Defendants-Appellees.

No. 359144
Wayne Circuit Court
LC No. 21-003413-CZ

ON REMAND

Before: CAVANAGH, P.J., and BOONSTRA and RIORDAN, JJ.

PER CURIAM.

        This case is back before this Court following our Supreme Court's remand.[2] We reverse the trial court's grant of summary disposition in favor of defendants and intervening defendants and remand for further proceedings consistent with this opinion.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

        Plaintiffs and intervening plaintiffs (collectively, "plaintiffs") are applicants who were denied licenses to sell marijuana in defendant city of Westland (the city). Defendants are the city and various municipal entities and employees involved in issuing marijuana-seller licenses. Intervening defendants Quality Roots, Inc. and MPM-R VIII, LLC are successful applicants who obtained conditional licenses for marijuana businesses in the city.

---

[2] See *Blue Water II*, ___ Mich at ___.

This Court set forth the facts underlying this litigation in our previous opinion:

In October 2019, the City adopted the Westland Uniform Marijuana Business Ordinance, § 27-1 *et seq.*, to exercise its police, regulatory, and licensing powers over both medical-use and adult-recreational-use businesses selling marijuana to the extent permissible under state law, specifically the Medical Marihuana Facilities Licensing Act, MCL 333.27101 *et seq.*, and the Michigan Regulation and Taxation of Marijuana Act (MRTMA), MCL 333.27951 *et seq*. Westland Code, §§ 27-1, 27-2. The City created three types of licenses and allowed licenses to be issued for up to eight business locations. Westland Code, §§ 27-5(a) and 27-6.

Applicants were required to submit an application with the City and pay a fee of $5,000, up to $2,500 of which was refundable if an application was denied. Applicants were required to provide proof that they had secured rights to any property intended to be used for their business locations. Applicants were also required to submit proof of prequalification through the Michigan Marijuana Regulatory Agency. Applicants were required to sign and attest that the application, under penalty of perjury, was true to each applicant's information, knowledge, and belief. Westland Code, §§ 27-4 and 27-9.

Completed applications were evaluated on the basis of a written policy approved by the City Council. That policy was required to contain rules for evaluation and selection of the competing applications, and the ordinance also provided that a selection committee would carry out the policy. Westland Code, § 27-12(a). The ordinance provides that "[t]he selection committee shall score and rank applications for each category of business location based on the rules in the application consideration policy." Westland Code, § 27-12(b).

On May 18, 2020, the City adopted the Marijuana Business Application Consideration Policy (the "Policy") after it was approved by the City Council, which set forth the rules for evaluating license applications. Section 1.11 of the Policy established a Selection Committee as an administrative subcommittee, comprised of three city administrative employees appointed by the mayor, to sort, review, and score the applications, among other duties outlined in the Policy. The Policy specifically provided that the Selection Committee shall not make a final decision regarding the awarding of licenses. Policy, § 1.11.

The Selection Committee was required to conduct a prereview of all applications, and all properly filed applications were to be separated into different licensing categories. Policy, §§ 3.1-3.6. The Selection Committee was then required to review and score the applications according to the Policy's guidelines. Policy, § 3.7. The Selection Committee was required to score the applications using the scoring rubric adopted by the City, which defined certain categories to consider for each planned business and the points to award in order to arrive at a ranking of the applications in each license category. Policy, § 4.1. The Policy also adopted procedures to follow in the event of ties among applicants. This included first giving greater weight to certain scores under the scoring rubric. Policy, §§ 4.8-

-3-

4.10. If there was still a tie after those adjustments, the Policy required that a blind lottery drawing be held to determine the ranking of applications. Policy, §§ 4.11, 4.12, and 4.13. The Selection Committee was required to compile a list of the applicants and their scores, ranking them from highest to lowest, and to send that list to the City Council and to each applicant. Policy, §§ 5.1 and 5.2.

Each applicant had a 10-day period from notice of its right to appeal to file an appeal with the Marijuana Business Review Board (the "Review Board") to challenge its score. Policy, §§ 5.3 and 5.4. The Review Board was to consider each written appeal at a public hearing and applicants appealing also had a right to orally address the Review Board for 10 minutes. Policy, §§ 5.5 and 5.6. After hearing all appeals, the Review Board was required to issue its recommendation to either uphold the list or make modifications. Any ties were to be resolved in the same manner that the Selection Committee used to resolve ties. After the Review Board's recommendations were forwarded to the City Council, the City Council was to consider and certify the list with any adjustments. The City Council's decision regarding the list was final. Policy, §§ 5.7 and 5.8. Only the highest ranked applicants in each license category would be considered for and offered a conditional license. The City would not maintain a waiting list for unsuccessful applicants. Policy, §§ 6.1-6.3.

\* \* \*

MHS Westland and Harper further alleged that decisions on the applications were made in secret by the Selection Committee. They also claimed that there was bias and favoritism in the application process, although examples were not provided. Plaintiffs alleged that several applicants appealed the Selection Committee's final scoring decisions to the Review Board, but the Review Board simply "rubber stamped" the committee's scoring decisions and none of their scores were changed. Plaintiffs also alleged that some council members raised questions about the selection process and were provided only three days to review the final recommendations of the Selection Committee before voting on the final licenses, which involved reviewing 21,000 pages of application materials. Furthermore, plaintiffs questioned the appellate process because the Review Board did not include participation by attorneys. On March 15, 2021, defendant and council member Tasha Green raised concerns about the selection process, including the interpretation of the term "property" and the lack of time to review the applications. Defendant and council member Peter Herzberg also took issue with the fact that all appeals were denied at once and no changes were made through the appellate process. On March 15, 2021, the City Council voted to approve a resolution awarding the licenses to those applicants originally recommended by the Selection Committee. Exclusive made similar allegations in its amended complaint.

Exclusive received a score of 81 out of 100 points, but believed that it should have received 100 points if its application had been properly scored.[3]

In their respective complaints, MHS Westland, LLC and Exclusive Brands, LLC (together, appellants) alleged that the Selection Committee violated the Open Meetings Act (OMA), MCL 15.261 *et seq.*, when it met in private to score the applications and decide which applicants were qualified for licenses when making recommendations to the City Council. Defendants and intervening defendants moved for summary disposition, under MCR 2.116(C)(8), on plaintiffs' claims that the OMA was violated because the Selection Committee had met in private. Defendants and intervening defendants argued that no violation of the OMA was possible because the Selection Committee was not a public body. Appellants' cases were consolidated with the cases brought by the other plaintiffs and intervening plaintiffs.

The trial court granted defendants' and intervening defendants' motions for summary disposition on plaintiffs' OMA claims. On appeal, this Court, following existing authority at the time, see *Pinebrook Warren, LLC v City of Warren*, 343 Mich App 127; 996 NW2d 754 (2022) ("*Pinebrook Warren I*"), rev'd and rem'd by *Pinebrook Warren, LLC v City of Warren*, ___ Mich ___; ___ NW3d ___ (2024) ("*Pinebrook Warren II*"), affirmed the trial court, holding that the Selection Committee was not a "public body" under the OMA.[4] Plaintiffs applied for leave to appeal to the Michigan Supreme Court. In lieu of granting leave to appeal, and having previously held the matter in abeyance pending its decision in *Pinebrook Warren II*,[5] the Supreme Court vacated part of this Court's opinion and remanded the case to this Court for reconsideration in light of *Pinebrook Warren II*, stating in relevant part:

> By order of November 22, 2023, the application for leave to appeal the April 13, 2023 judgment of the Court of Appeals was held in abeyance pending the decision in *Pinebrook Warren, LLC v City of Warren* (Docket Nos. 164869-77). On order of the Court, the case having been decided on July 31, 2024, ___ Mich ___ (2024), the application is again considered. Pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we VACATE that part of the judgment of the Court of Appeals addressing whether the Selection Committee violated the Open Meetings Act, MCL 15.261 *et seq.*, and REMAND this case to that court for reconsideration in light of *Pinebrook Warren*. [*Blue Water Cannabis Co, LLC v City of Westland*, ___ Mich ___; 12 NW3d 609 (2024) ("*Blue Water II*").][6]

---

[3] See *Blue Water Cannabis Co, LLC v City of Westland*, unpublished per curiam opinion of the Court of Appeals, issued April 13, 2023 (Docket Nos. 359144, 359168) ("*Blue Water I*").

[4] See *Blue Water I*, unpub op at 26.

[5] See *Pinebrook Warren, LLC v City of Warren*, 513 Mich 903; 997 NW2d 32 (2023).

[6] Justice VIVIANO (joined by Justice ZAHRA) dissented in relevant part for the reasons stated in his dissent in *Pinebrook Warren II*. *Blue Water II*, ___ Mich at ___, citing *Pinebrook Warren II*, ___ Mich at ___ (VIVIANO, J. dissenting).

The Court denied leave to appeal in all other respects. We now consider the matter anew upon the Supreme Court's remand.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's grant of summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the claim based on the pleadings alone. *El-Khalil*, 504 Mich at 159. A court reviewing a (C)(8) motion must accept as true all well-pleaded factual allegations in the complaint. *Id*. at 160. The motion may only be granted if the claim is so clearly unenforceable that no factual development could support recovery. *Id*.

## III. ANALYSIS

Following the rationale of our Supreme Court's decision in *Pinebrook Warren II*, we conclude that the trial court erred by holding that the Selection Committee could not have violated the OMA because it was not a "public body." The OMA requires that "meetings," "decisions," and "deliberations" of a "public body" must be open to the public. See MCL 15.263(1) to (3). In *Pinebrook Warren II*, the Michigan Supreme Court concluded that the defendant city of Warren's Review Committee, which functioned in a very similar manner to that alleged with respect to the city's Selection Committee in this case, was acting as a "public body." *Pinebrook Warren II*, slip op at 14-15, 21-22. The Court noted that the Review Committee reviewed marijuana-seller applications after the applications were approved by a zoning inspector, and scored them on multiple factors. Further, although the city council was supposed to rank the applications, the Review Committee actually ranked them. The Review Committee's initial meetings were not open to the public and no minutes were available of the meetings. *Id*. at ___; slip op at 14-17.

The Supreme Court held that this Court had erred by accepting the defendants' contention that the Review Committee played only an advisory role, and by not analyzing whether the Review Committee was performing a de facto governmental function by reviewing and ranking the applications, when the city council did not independently consider the merits of the applications before accepting or denying them. See *Pinebrook Warren II*, ___ Mich at ___; slip op at 29-31. The Court concluded that the Review Committee was actually acting as a governing body by deciding who would receive licenses and, as a result, its actions were subject to the OMA, reversing this Court's opinion in *Pinebrook Warren I*, which had held that the Review Committee was not a public body. *Id*. at ___; slip op at 18-19, 21, 27.

The allegations in this case are very similar to those in *Pinebrook Warren*. In both cases, a separate committee was set up to review and score applications for licenses, and the final results were sent to the governing body, the city council, for its decision. Plaintiffs alleged in this case, as was alleged in *Pinebrook Warren*, that the committee was charged with reviewing and scoring the applications, and that the city council did not independently consider the merits of those applications. Therefore, under *Pinebrook Warren II*, plaintiffs' allegations, if proven, would support the conclusion that the Selection Committee in this case was the de facto decisionmaker with regard to awarding marijuana-seller licenses and accordingly was subject to the OMA.

Defendants' and intervening defendants' arguments on remand do not alter this conclusion. Although they point out that appeals from the decisions of the city's Review Board were open to the public, it is the activity of the Selection Committee that is at issue in plaintiffs' OMA claims. By the time the Review Board heard appeals, the selection process had been completed and the applicants had already been ranked. Moreover, it appears that the Review Board made no changes to the Selection Committee's recommendations, suggesting that the Review Board may have merely "rubber stamped" the Selection Committee's work. Additionally, the city council arguably had insufficient time to engage in an independent review of the work performed by the Selection Committee if it was only acting in an advisory capacity. Defendants and intervening defendants have not established that this is case is different enough from *Pinebrook Warren* to compel a conclusion that they should prevail as a matter of law. Under *Pinebrook Warren II*, we cannot conclude that plaintiffs' claim is so clearly unenforceable that no factual development could support recovery. MCR 2.116(C)(8); *El-Khalil*, 504 Mich at 159.

Accordingly, we hold that the trial court erred by granting summary disposition to defendants and intervening defendants, under MCR 2.116(C)(8), on plaintiffs' OMA claims. We therefore reverse the relevant portion of the trial court's September 20, 2021 order and remand to the trial court for further proceedings consistent with this opinion.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Michael J. Riordan

CAVANAGH, P.J., not participating, having resigned from the Court of Appeals effective January 1, 2025.